1

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
 2    - - - - - - - - - - - - - - X
        UNITED STATES OF AMERICA,    :   23-CR-197(JS)
 3                                   :
                      Plaintiff,     :
 4                                   :   United States Courthouse
           -against-                 :   Brooklyn, New York
 5                                   :
        NANCY MARKS,                  :
 6                                   :   October 5, 2023
                      Defendant.     :   3:00 p.m.
 7                                   :
                                     :
 8    - - - - - - - - - - - - - - X
 9            TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
10           BEFORE THE HONORABLE JOANNA SEYBERT
                    UNITED STATES DISTRICT JUDGE
11
12                 A P P E A R A N C E S :
13    For the Government:   BREON PEACE, ESQ.
                            United States Attorney
14                          Eastern District of New York
                               271-A Cadman Plaza East
15                             Brooklyn, New York 11201
                            BY: ANTHONY BAGNUOLA, ESQ.
16                              RYAN HARRIS, ESQ.
                                LAURA ZUCKERWISE, ESQ.
17                              Assistant United States Attorneys
18                          UNITED STATES DEPARTMENT OF JUSTICE
                            Public Integrity Section
19                             1301 New York Avenue NW, 10th Floor
                               Washington, D.C. 20530
20                          BY: JACOB STEINER, ESQ.
                                JOHN TADDEI, ESQ.
21                              Assistant United States Attorneys
22    For the Defendant:    PERINI & HOERGER
23                             1770 Motor Parkway, Suite 300
                               Hauppauge, New York 11749
24                          BY: RAYMOND PERINI, ESQ.
                                MAUREEN HOERGER, ESQ.
25
```

*Proceedings*                                                      2

1    Court Reporter:    KRISTI CRUZ, RMR, CRR, RPR
                        Official Court Reporter
2                       100 Federal Plaza / Central Islip, NY 11722
                        E-mail: kristi.edny@gmail.com
3
     Proceedings recorded by computerized stenography.  Transcript produced by
4    Computer-Aided Transcription.

5

6                              *       *       *       *

7

8

9              (In open court.)

10             THE COURTROOM DEPUTY:  All rise.

11             (Judge enters.)

12             THE COURT:  Good afternoon.  Please be seated.

13             MR. PERINI:  Good afternoon, Your Honor.

14             MR. BAGNUOLA:  Good afternoon, Your Honor.

15             THE COURTROOM DEPUTY:  Calling criminal case

16   23-CR-197, United States of America versus Nancy Marks.

17             Counsel, please state your appearances for the

18   record.

19             MR. BAGNUOLA:  Good afternoon, Your Honor.

20             Anthony Bagnuola for the Government.

21             With me at counsel table today are Assistant U.S.

22   Attorneys Ryan Harris and Laura Zuckerwise, as well as trial

23   attorneys Jacob Steiner and John Taddei from the Public

24   Integrity Section of the Justice Department.

25             THE COURT:  Good afternoon to you all.

*Proceedings*                                                    3

1          MR. PERINI:  Your Honor, Perini & Hoerger by

2     Raymond G. Perini, 1770 Motor Parkway.

3          At the table is my partner, Maureen Hoerger.

4          We're on behalf of Nancy Marks.

5          THE COURT:  Good afternoon to you all.

6          All right.  I understand there's going to be an

7     arraignment initially on the information with the waiver.

8     I'll advise the Government of the Brady rights of the

9     defendant.

10         And then it's my additional understanding that

11    there's going to be a disposition on one of the counts.

12         MR. PERINI:  That's right.

13         THE COURT:  So based on that, if you would stand,

14    Ms. Marks, we'll have you sworn in.

15         THE COURTROOM DEPUTY:  Ma'am, please raise your

16    right hand.

17         (Defendant sworn.)

18         THE COURTROOM DEPUTY:  Thank you.  You may be

19    seated.

20         THE COURT:  If you would speak directly into the

21    microphone.

22         Ms. Marks, you're under oath.  If you don't tell

23    the truth, you could be charged with perjury and face

24    additional jail time.

25         Do you understand that?

*Proceedings*                                                    4

1      THE DEFENDANT:  Yes, I do, Your Honor.

2      THE COURT:  If at any time you don't understand a

3  question, tell me you don't understand it and I'll rephrase

4  it.

5      And if at any time you want to speak to your

6  lawyer before you answer a question, let me know that and

7  I'll give you a chance to speak to counsel in private.

8      All right?

9      THE DEFENDANT:  Yes.  Thank you.

10     THE COURT:  You're welcome.

11     Are you willing to answer my questions under oath

12 knowing the consequences of not telling the truth?

13     THE DEFENDANT:  Yes, Your Honor.

14     THE COURT:  Prior to coming to court today, have

15 you had any drugs, alcohol, any substance that might impair

16 your ability to understand these proceedings?

17     THE DEFENDANT:  No.  Just my medical prescription.

18     THE COURT:  In terms of your medical prescriptions,

19 you're able to function, drive a car, speak to counsel,

20 review everything; is that correct?

21     THE DEFENDANT:  Correct, Your Honor.

22     THE COURT:  And have you had sufficient time to

23 review the documents and discuss these items with your

24 attorney?

25     THE DEFENDANT:  Yes, Your Honor.

*Proceedings*                                                              5

1          THE COURT:  And there is currently an information,

2    and you know you're entitled to have an indictment.  An

3    indictment would require a grand jury to render a

4    determination that there was sufficient evidence to hold you

5    for trial.

6          Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  The Government would present a case to

9    the grand jury, and they would make a determination as to

10   whether or not there was sufficient evidence.

11         Meanwhile, information that you have at this point

12   is a document that's signed by the U.S. Attorney.  It's not

13   presented as to a grand jury, and you're giving up that

14   important right, because this is a felony charge we're

15   talking about.

16         Do you understand?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  All right.

19         Having done that and being advised, Mr. Perini, of

20   her rights, the defendant has executed a Waiver of

21   Indictment; is that correct?

22         MR. PERINI:  That's correct, Your Honor.

23         THE COURT:  Unless there's something else to be

24   stated, the Court will accept that, and I will advise the

25   Government of the defendant's rights under Brady.

*Proceedings*                                                          6

1          I direct the prosecution to comply with its

2     obligation under *Brady vs. Maryland* and its progeny to

3     disclose to the defense all information, whether admissible

4     or not, that is favorable to the defendant, material either

5     to guilt or to punishment, and known to the prosecution.

6     Possible consequences for noncompliance may include

7     dismissal of individual charges of the entire case,

8     exclusion of evidence, and professional discipline or court

9     sanctions on the attorneys responsible.  I will be entering

10    a written order more fully describing this obligation and

11    the possible consequences of failing to meet it, and I

12    direct the prosecution to review and comply with that order.

13          Does the prosecution confirm that it understands

14    its obligations and will fulfill them?

15          MR. BAGNUOLA:  Yes, Your Honor, we do and we will.

16          THE COURT:  Thank you.  All right.  And I will

17    sign off on the Waiver of Indictment.

18          A not guilty plea has been entered, and it's my

19    understanding that the defendant wishes to withdraw the not

20    guilty plea and enter a guilty plea to the information as to

21    conspiracy to defraud the United States; is that correct?

22          MR. PERINI:  That's correct, Your Honor.

23          MR. BAGNUOLA:  Yes, Your Honor.  This is a

24    single-count information.

25          THE COURT:  Yes.

*Proceedings*                                                        7

1      MR. BAGNUOLA:  The exact charge contained in here

2 is conspiracy to commit one or more federal offenses.

3      THE COURT:  Everybody's coughing.  This is not a

4 good sign.

5      MR. PERINI:  I think it's only me.

6      THE COURT:  The Government has also given to the

7 Court, in addition to the plea agreement, and I have a

8 standard plea form that I use, is also an element sheet

9 which indicates this is a conspiracy to defraud the United

10 States under 18 United States Code Section 371, and the

11 conspiratorial object is a wire fraud under Section 18

12 United States Code 1343.  Also Conspiratorial Object

13 Number 2, false statements under 18 United States Code

14 Section 1001(a)(2).  And Conspiratorial Object Number 3,

15 falsification of a record or document, and that's under

16 Title 18 United States Code section 1519.  And

17 Conspiratorial Object Number 4, aggravated identity theft,

18 under 18 United States Code 1028(a).

19      In addition, let me ask Ms. Marks, have you

20 reviewed the plea agreement with your attorney?

21      THE DEFENDANT:  Yes, I have, Your Honor.

22      THE COURT:  And you filled out the standard plea

23 form indicating you understand your rights and the

24 consequences of pleading guilty, essentially, right?

25      THE DEFENDANT:  Yes, Your Honor.

*Proceedings*                                                          8

1    THE COURT:  Now, having waived indictment, you're

2   now facing this one count, information, and based on that

3   you'll be pleading guilty to, as I said before, Title 18

4   United States Code 371, and that's a conspiracy to commit

5   one or more offenses against the United States.  The maximum

6   term of imprisonment is five years.  There is no minimum

7   term.  There's a maximum supervised release term of three

8   years.  But if you violate any of the portions of your

9   obligations under the supervised release term, you can be

10  sent back to jail and serve additional time, and you can be

11  sentenced up to two years without credit for prerelease

12  imprisonment or time previously served on post-release.

13            Do you understand that?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  Additionally, there is a maximum fine

16  of $250,000, or twice the gross gain or twice the gross

17  loss.

18            Do you realize that?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  Restitution is mandatory, and that

21  would mean the full amount of each victim's losses as I

22  would determine.  Additionally, you must pay a $100 special

23  assessment fee.

24            Do you realize that?

25            THE DEFENDANT:  Yes, Your Honor.

*Proceedings*                                                        9

1    THE COURT:  And I'm sure Mr. Perini and

2    Ms. Hoerger has told you about the sentencing guidelines.

3    They are advisory.  The Court is not required to follow

4    them, but the Court is required to look at them, review

5    them, and see where you stand in terms of the guidelines as.

6    It's calculated now, there's a base offense of 6, a loss

7    between $150,000 and $250,000; abuse of trust, position of

8    public trust, and that's two additional levels, for a total

9    of 18.

10   And going on with the conspiratorial object,

11   there's a total of 16 with respect to obstruction of

12   justice.  The conspiratorial object with false statements,

13   that's an 8.  Conspiratorial object of identity theft,

14   that's 18.  So you have a base offense of 18, and there is

15   no additional calculation on that.

16   But according to this agreement, if you clearly

17   demonstrate your acceptance of responsibility through your

18   allocution, your pleading guilty, and your subsequent

19   conduct prior to sentence being imposed, you'll get a

20   two-level reduction, and if that's warranted and the Court

21   makes that determination, that would result in an adjusted

22   offense level of 16 and a range of imprisonment of 21 to 27

23   months.  That's assuming you have a Criminal History

24   Category of I.

25   In addition, that would also allow additional time

*Proceedings*                                                    10

1    to be put on here with conspiratorial object number four,

2    that's 24 months to run consecutive to all other counts.

3    The effective guideline range, therefore, is 45 to 51

4    months.  And if you accept responsibility, according to the

5    U.S. Attorney's Office, they will recommend, plead guilty

6    today, an additional one-level reduction, which will bring

7    you down to an imprisonment range of 18 to 24 months, and

8    because of Conspiratorial Object Number 4, 24 months in

9    addition to run consecutive to all the other counts.  So

10   that puts you at a guideline range of 42 to 48 months.

11            Do you understand that calculation?

12            THE DEFENDANT:  I do, Your Honor.

13            THE COURT:  Are you sure?

14            THE DEFENDANT:  Yes.  We went over it.

15            THE COURT:  All right.

16            In addition, you know that these conditions are

17   not binding on the U.S. Attorney's Office, the Probation

18   Department, or the Court.  They are an estimate.  The

19   guideline offense can be different that's advocated by the

20   U.S. Attorney's Office or determined by the Probation

21   Department or by the Court.

22            Do you realize that?

23            THE DEFENDANT:  Yes.

24            THE COURT:  However, you are agreeing not to file

25   an appeal, other than if you're filing an appeal for

1    ineffective assistance of counsel.  You won't file an appeal

2    of the Court's sentence if I sentence you to a term of 51

3    months or less.

4              THE DEFENDANT:  Correct, Your Honor.

5              THE COURT:  Okay.  And Mr. Perini and Ms. Hoerger

6    have described that to you in detail, right?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  So you give up any right to challenge

9    your conviction as being unconstitutional, claiming that it

10   doesn't fall within the statute or have any appellate

11   review.

12             All right?

13             THE DEFENDANT:  I do.

14             THE COURT:  Additionally, if the Government finds

15   out additional disclosure in connection with your guilty

16   plea, you are not going to file an appeal as a prevailing

17   party or under the various other ways to appeal; is that

18   correct?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  And you promise to pay the special

21   assessment to the Clerk of the Court on or before

22   sentencing; is that right?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  And this is what the U.S. Attorney's

25   Office is promising to you based on what they know now, that

*Proceedings*                                                    12

1   they will have no further criminal charges against you for

2   participating --

3             MR. BAGNUOLA:  Your Honor.

4             THE COURT:  Sorry?

5             MR. BAGNUOLA:  May we approach just for one

6   moment, please?

7             THE COURT:  Sure.  Come on up.

8             (Sidebar conference.)

9             (Continued on the following page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following occurred at sidebar and is under

2     seal.)







24    (Sidebar ends.)

25    (Continued on following page.)

*Proceedings*                                              16

1           (In open court.)

2           THE COURT:  All right.  With regard to the plea

3    agreement, that will be filed, but the portion that I

4    started to refer to will not be filed, but the information

5    lays out the elements.

6           Let me ask you, Ms. Marks, have you had a chance

7    to review not only the plea agreement, but the information

8    in its entirety?

9           THE DEFENDANT:  Yes, I have, Your Honor.

10          THE COURT:  All right.  And you've discussed this

11   with your attorney?

12          THE DEFENDANT:  Yes, I have.

13          THE COURT:  And you agree not to have this

14   particular portion of the plea agreement made public; is

15   that right?

16          THE DEFENDANT:  Correct, Your Honor.

17          THE COURT:  All right.

18          So also based on what the office knows now, it

19   will not make a motion for an upward departure into the

20   sentencing guidelines.  If they find out additional

21   information or you violate the terms of this agreement, then

22   they can make such a motion.  So they won't give you an

23   additional downward adjustment for timely acceptance as

24   indicated earlier, and they will be bound by the various

25   provisions of the plea agreement that we've referred to.

*Proceedings* 17

1           Do you understand that?

2           THE DEFENDANT:  Yes, I do.

3           THE COURT:  You also understand that this plea

4   agreement, this agreement you have with the Government,

5   doesn't bind the Government from going after you

6   administratively, civilly, and also it doesn't stop other

7   governmental and state entities from prosecuting you.  It's

8   limited to the U.S. Attorney for the Eastern District of New

9   York on the charges.

10          Do you understand that?

11          THE DEFENDANT:  Yes, I do.

12          MR. PERINI:  Your Honor, can I have one moment to

13  speak to the prosecutor?

14          THE COURT:  Yes.

15          (Discussion held off the record.)

16          MR. PERINI:  Your Honor, I have no further

17  application.

18          THE COURT:  You have no further application.

19          MR. PERINI:  None, Your Honor.

20          THE COURT:  All right.

21          And also, Ms. Marks, this is the only agreement

22  that you're aware of?  You don't have any written proffer

23  agreements; is that correct?

24          THE DEFENDANT:  Correct, Your Honor.

25          THE COURT:  And you know if you violate the terms

*Proceedings*                                                      18

 1   of the agreement, that can result in the Government making

 2   various motions to increase your penalties.  All right?

 3               THE DEFENDANT:  Yes, Your Honor.

 4               THE COURT:  All right.

 5               We've gone through basically the rights you'll be

 6   giving up if I accept your plea to this information.

 7               First of all, you're entitled to a public speedy

 8   trial, at which you are entitled to counsel.  If you don't

 9   have funds for counsel, the Court would appoint counsel for

10   you.

11               Additionally, you're entitled to have witnesses

12   subpoenaed on your behalf.  There's a variety of defenses

13   that you have to these charges.  Counsel has discussed that

14   with you; is that correct?

15               THE DEFENDANT:  Correct, Your Honor.

16               THE COURT:  The Government has the burden of

17   proving your guilt beyond a reasonable doubt.  That burden

18   remains on the Government up until a jury of 12 impartial

19   jurors find you guilty beyond a reasonable doubt.  It

20   continues.  So you're giving up a very significant right by

21   pleading guilty.

22               Do you understand that?

23               THE DEFENDANT:  Yes, I do.

24               THE COURT:  And there's other rights that you have

25   with respect to your appeals process.  There are a variety

*Proceedings*                                                      19

1   of things, defenses, I'm sure you've discussed with counsel,

2   and you understand you're giving them up too?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Do you also understand that you're

5   agreeing not to appeal the sentence if you're sentenced to a

6   term of 51 months or less?

7          THE DEFENDANT:  Correct.

8          THE COURT:  Are there any other agreements or

9   promises as to what this sentence would be?

10         THE DEFENDANT:  No, Your Honor.

11         THE COURT:  Do you have any questions?

12         THE DEFENDANT:  At the moment, no.

13         THE COURT:  All right.

14         And Mr. Perini and Ms. Hoerger have discussed in

15  detail with you the consequences of pleading guilty?

16         THE DEFENDANT:  Everything, Your Honor.

17         THE COURT:  And you're pleading guilty because you

18  are guilty and for no other reason?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  All right.

21         Can you tell me what it is that you did -- if you

22  have a written summary or however you're going to do it --

23  with respect to this charge?

24         MR. PERINI:  Your Honor, it is a written summary

25  that we've gone over and which she will read to the Court.

1          Would you like her to stand?

2          THE COURT:  No, I'd like her to be seated and

3     speak directly into the mic so we have an accurate record,

4     if you would.

5          THE DEFENDANT:  Your Honor, I have read the

6     information and understand it.  I admit to all the actions

7     attributed to me in the information, including when I filed

8     a list of false donors with the FEC on the year-end 2021

9     report knowing it was not true, and the donors, who are the

10    real people, didn't give me permission to use their names.

11    I filed the first quarter 2022 report stating that 500,000

12    was loaned to the campaign by Co-Conspirator Number 1, and

13    the money was not received at that time.  As campaign

14    treasurer, I knew that the loan had not been made at that

15    time.

16          These reports were created and filed online within

17    the Eastern District of New York.  I did these things in

18    agreement with Co-Conspirator Number 1 for his benefit and

19    to obtain money for his campaign by artificially inflating

20    his funds to meet thresholds set by a national political

21    committee.  I knew that this information was material to the

22    FEC and that they would rely on it.

23          THE COURT:  All right.

24          And where did this occur?  Any particular area or

25    location?

*Proceedings*                                                    21

 1          THE DEFENDANT:  It covered New York Congressional

 2   Number 3.

 3          THE COURT:  And that's in the Eastern District of

 4   New York, correct?

 5          THE DEFENDANT:  Correct.

 6          THE COURT:  All right.

 7          What would the Government's proof be with regard

 8   to the various elements in these charges?

 9          MR. BAGNUOLA:  Yes, Your Honor.  Would you prefer

10   I also remain seated?

11          THE COURT:  Yes, I would.

12          MR. BAGNUOLA:  If this case were to proceed to

13   trial, the Government would offer official reports, emails

14   and text messages, financial records, and testimony from

15   victims and witnesses, among other things, to establish the

16   following:

17          During the 2020 and 2022 election cycles,

18   Ms. Marks was the treasurer for the principal fundraising

19   committee for a congressional candidate here in the Eastern

20   District of New York.  As part of her job for the campaign,

21   Ms. Marks made periodic reports, usually online, to the FEC,

22   the federal agency charged with accurately reporting to the

23   public the sources and amounts of money raised by political

24   campaigns and monitoring compliance with campaign finance

25   laws.

1          During the 2020 and 2022 election cycles, however,

2    Ms. Marks and the candidate agreed to and did make numerous

3    false reports and statements to the FEC, to a national

4    political party committee based in Washington, D.C., and to

5    the public, all for the purpose of falsely inflating the

6    campaign's publicly-reported fundraising numbers and

7    tricking the national political party committee into

8    accepting the candidate into a program that would provide

9    financial and logistical support to the campaign.

10          For example, in the campaign's 2021 year-end

11   report, Ms. Marks and the candidate agreed to and did

12   falsely report that at least ten of their family members had

13   made significant financial contributions to the campaign,

14   many on the final day of the reporting cycle.  In fact,

15   Ms. Marks and the candidate knew that none of those

16   individuals had made the reported contributions.

17   Nevertheless, Ms. Marks and the candidate used those

18   individuals' names, addresses, and other personal

19   information without their knowledge or consent to make false

20   public filings to the FEC.

21          The purpose of this fraudulent scheme was to make

22   it appear that the campaign had reached certain fundraising

23   benchmarks that were required for qualification in the

24   program run by the national political party committee when,

25   in fact, the campaign had not met those benchmarks.

*Proceedings*                                              23

1        Based on Ms. Marks's falsified reports, the

2    campaign falsely claimed total quarterly receipts exceeding

3    that required for qualification and acceptance in the

4    national party committee's program.  And at least partially

5    in reliance on those false reports, the candidate was

6    accepted into the program and received financial and

7    logistical support from the national political party

8    committee.

9        Thereafter, Ms. Marks and the candidate agreed to

10   and did continue making false representations to the FEC, to

11   the national political party committee, and in public

12   statements about the campaign's fund raising.  In

13   particular, in the campaign's 2022 first quarter report,

14   Ms. Marks and the candidate agreed to and did falsely report

15   to the FEC that the candidate personally loaned $500,000 to

16   the campaign.  In fact, Ms. Marks and the candidate knew

17   that the candidate made no such loan, and at the time lacked

18   the financial ability to make any such loan.

19       Again, based in part on Ms. Marks's and the

20   candidate's fraudulent conduct, the national political party

21   committee provided financial and logistical support to the

22   campaign, including access to the proceeds of joint

23   fundraising efforts involving other accepted members of the

24   program.

25       THE COURT:  How do you plead to the information,

1    Ms. Marks?

2              THE DEFENDANT:  Guilty, Your Honor.

3              THE COURT:  The Court finds that you made a

4    knowing voluntary waiver of your rights, that you understand

5    the consequences of pleading guilty, and there is factual

6    predicate and the Government has the proof to establish your

7    guilt.

8              All right.

9              I understand that Pretrial Services has done a

10   report, which I've reviewed, and I believe that there is a

11   potential suretor and monies that were put up.  This would

12   be a personal recognizance bond in the amount of $100,000,

13   and defendant has agreed to submit to Pretrial supervision

14   and report to Pretrial Services as directed.  She will

15   surrender any passport to Pretrial Services.  She'll not

16   obtain another one or engage in any international travel.

17   She shall not leave the areas except for travel to and from

18   court, Long Island, New York, New York City, and other

19   Florida and travel-between destinations.  She will not have

20   any contact with the individuals that have been provided,

21   and locations, to defense counsel.

22             Do you acknowledge that you will not have contact

23   with these persons?

24             MR. PERINI:  Your Honor, we have not gotten that

25   list yet, but we have talked about it, so I believe we all

*Proceedings*                                               25

1   are on the same page.

2          MR. BAGNUOLA:  Yes, Your Honor.  The Government

3   will provide a list of individuals to defense counsel as to

4   whom those restrictions should apply.

5          THE COURT:  All right.  And you haven't done that

6   yet?

7          MR. BAGNUOLA:  We will after we recess these

8   proceedings, Your Honor.

9          If I may, before we move on entirely from

10  Ms. Marks's allocution, I would ask the Court just to put

11  the question to Ms. Marks to confirm that her plea is

12  voluntary and absent force, threats, and promises, other

13  than those contained in the plea agreement.

14         THE COURT:  I thought that was included, but I'll

15  do it again.

16         MR. BAGNUOLA:  Thank you, Your Honor.

17         THE COURT:  Ms. Marks, do you agree that your plea

18  is not forced, it's voluntary; no one has threatened you; no

19  one has said that you must plead guilty; and you understand

20  the waiver of all your rights?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  All right.

23         MR. BAGNUOLA:  Thank you, Your Honor.

24         THE COURT:  You're welcome.

25         So going back to your terms of release, you'll

*Proceedings*                                                    26

1   maintain a residence that will be at a location approved by

2   Pretrial Services.  There's no curfew involved here.

3          And the $100,000 bond, is that going to be put up

4   by --

5          MR. PERINI:  Unsecured, Your Honor.

6          THE COURT:  Unsecured.  All right.

7          So that's on your promise.  If you don't return to

8   court, you can be charged with additional criminal charges,

9   and you certainly would not do well if you came back to the

10  Court.  I would issue a warrant for your arrest previously,

11  and that would have dire circumstances.

12         All right?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  A date for future.  Let me check with

15  Eric.

16         THE COURTROOM DEPUTY:  Counsel, can we do

17  April 12th at 1:30?

18         MR. BAGNUOLA:  That should be fine for the

19  Government.  Thank you.

20         MR. PERINI:  That's fine, Your Honor.

21         THE COURTROOM DEPUTY:  And sentencing memos will

22  be April 5th.

23         THE COURT:  Please make sure that you report to

24  Pretrial Services.

25         Unless there's something else, documents will be

*Proceedings*                                                    27

1    filed.

2              Thank you.

3              MR. PERINI:  Thank you, Your Honor.

4              MR. BAGNUOLA:  Thank you, Your Honor.

5              (Matter adjourned.)

6

7

8                        *      *      *      *      *

9

10

11   I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
12

13   /s/ Kristi Cruz
     _____
14       KRISTI CRUZ

15

16

17

18

19

20

21

22

23

24

25