

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH/AXB/LAZ
F. #2022R01030

*610 Federal Plaza*
*Central Islip, New York 11722*

May 1, 2025

By ECF

The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

        Re:    United States v. Nancy Marks
                 Criminal Docket No. 23-197 (JS)

Dear Judge Seybert:

        The government respectfully submits this letter in connection with Nancy Marks's sentencing in the above-captioned matter. The Probation Department has calculated Marks's advisory Guidelines range to be 18 to 24 months and has recommended a principal sentence of 18 months' imprisonment, together with restitution in the total amount of $178,402.97. (PSR ¶¶ 141, 150; Sent'g Rec. 1). For the following reasons, the government respectfully concurs in Probation's recommendation that an 18-month custodial sentence plus restitution would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

    I.    Background

        A.    Offense Conduct

        This case stems from Marks's involvement in the 2020 and 2022 congressional campaigns of her co-defendant, former U.S. Representative George Anthony Devolder Santos. At the time of those campaigns, Marks was an experienced political operative.[1] In her capacity as the

---

        [1]    As recounted in the PSR, Marks left college early to begin a career in politics. (PSR ¶ 128). Among other positions, she worked as a legislative aide for a New York State Assemblyman and as Chief of Staff for a Suffolk County Legislator. (*Id.* ¶ 133). In March 2008, Marks founded Campaigns Unlimited, a political consultancy that provided candidates for elective office with treasury, marketing, and advertisement services. (*Id.* ¶ 132). She owned and operated that business for approximately 16 years, when her involvement in the instant criminal conduct led to its closure. (*Id.*). Without explanation, the PSR indicates that Campaigns Unlimited's gross monthly income is "unknown" to Marks, its founder and sole beneficial owner. (*See id.*). But public reporting indicates that the firm—described as a "Republican powerhouse for Long Island

Treasurer for Devolder-Santos for Congress—the principal fundraising committee for Santos's candidacy—Marks took an active role in planning and carrying out the instant fraudulent scheme.

In particular, Marks and Santos agreed to fabricate fundraising data provided to the Federal Election Commission ("FEC").[2] One of Marks's principal duties was to make periodic reports to the FEC concerning the campaign's fundraising efforts. Through her experience in the industry, Marks knew that the FEC was responsible for reporting to the public the sources and amounts of money raised by political campaigns and monitoring compliance with campaign finance laws. To artificially enhance the campaign's fundraising totals, and thereby fraudulently induce the National Republican Congressional Committee ("NRCC") to lend financial and logistical support to Santos's campaign, Marks and Santos agreed to falsely report tens of thousands of dollars in fake campaign donations. These contributions were reported in the names of her own unwitting family members, and unwitting family members of Santos. Marks and Santos also agreed to falsely report to the FEC (and then relay to the NRCC) that Santos had loaned his campaign $500,000 when, in fact, he had not and lacked the financial means to do so. In reliance on those fake reports, the NRCC accepted Santos into a program that provided his campaign with access to financial and logistical resources. (*See* PSR ¶¶ 5-28, 78).

In this way, Marks illegally conspired with Santos to accomplish four criminal objectives, all of which were designed to benefit Santos and his campaign: (i) to commit wire fraud, in violation of 18 U.S.C. § 1343; (ii) to make materially false statements to the FEC, in violation of 18 U.S.C. § 1001; (iii) to falsify official reports to the FEC, in violation of 18 U.S.C. § 1519; and (iv) to commit aggravated identity theft, in violation of 18 U.S.C. § 1028A.

B. Procedural History

On October 5, 2023, Marks appeared before this Court, waived indictment, and pled guilty to an Information, pursuant to 18 U.S.C. § 371, charging her with conspiring with Santos to commit the offenses listed above. (*See* ECF Nos. 42 (Information), 43 (Minute Entry), 64 (Hearing Transcript)). The Court determined that Marks was acting knowingly and voluntarily, and that a factual basis existed for her guilty plea. (*See* ECF No. 64 at 24:3-7).

---

campaigns at the local, state and congressional level"—collected $1.29 million for its work on state and local campaigns between 2008 and 2022, and another $1 million dollars for its work on congressional campaigns since 2009. *See* Michael Gormley, *Santos controversy: How Nancy Marks became a top GOP campaign adviser*, NEWSDAY (February 11, 2023), https://www.newsday.com/long-island/politics/nancy-marks-george-santos-republican-campaigns-fec-elections-treasurer-f0i1m1ra.

[2] For the sake of brevity, the relevant facts are summarized in this filing. Exhaustive recitations of the facts underlying the instant criminal scheme are set forth in the PSR and the government's letter of April 4, 2025, which was filed in connection with Santos's sentencing. (ECF No. 114).







II. Guidelines Calculation

The Guidelines calculation, as set forth in the PSR, is as follows:

| | |
|---|---:|
| Base Offense Level (§ 2B1.1(a)(2)) | 6 |
| Plus: Multiple Unit Increase (§ 3D1.4)[5] | +2 |
| Plus: Loss Between $150,000 and $250,000 (§ 2B1.1(b)(1)(F)) | +10 |
| Plus: Abuse of Position of Public Trust (§3B1.3) | +2 |
| Less: Zero-Point Offender Credit (§4C1.1(a), (b)) | -2 |
| Less: Acceptance of Responsibility (§3E1.1(a), (b)) | <u>-3</u> |

---

[5] The Guidelines calculation reflected above is an abridged version of the full grouping analysis utilized by Probation in the PSR and by the parties in Marks's plea agreement. (*See* PSR ¶¶ 87-109). Notably, one of the conspiratorial objects to which Marks pled guilty was aggravated identity theft—an offense carrying a mandatory 24-month sentence. *See* 18 U.S.C. § 1028A(a)(1); U.S.S.G. § 2B1.6(a). Because Marks pled guilty only to conspiring to commit that offense rather than the offense itself, the applicable Guidelines calculation does not incorporate the statutory minimum penalty. (*See* PSR ¶ 109 n.3). According to Probation, that fact may be considered in determining whether an upward departure from the applicable Guidelines range is warranted. (*Id.* ¶ 153).

Total: <u>15</u>

Based upon a total offense level of 15 and Criminal History Category I, the applicable Guidelines range is 18 to 24 months. (PSR ¶¶ 112, 141).

III.     Argument

    A.     Section 3553(a) Analysis

The Guidelines accurately reflect the seriousness of Marks's conduct in conspiring with Santos, a flagrantly corrupt and dishonest public figure, to perpetrate an historic fraud on the NRCC, the FEC, and the public. *See* 18 U.S.C. § 3553(a)(2)(A) (sentence needs to reflect seriousness of the offense). While Santos was plainly the leader and organizer of the scheme, Marks played a key role in its success. *Cf. United States v. Garcia*, 380 F.2d 153, 155 (2d Cir. 1990) (applicability of minor role adjustment depends on "the importance of the defendant's actions to the success of the [criminal] venture"). Indeed, it was Marks whose primary responsibility as Santos's campaign treasurer was to accurately account for, and report to the FEC, the campaign's fundraising results. It was Marks whose deep experience in Republican politics allowed her to grasp the significance to Santos's campaign of inclusion in the NRCC's Young Guns program. It was Marks whose years as a campaign treasurer were brought to bear in artificially inflating the campaign's public reports to achieve Santos's desired result. Simply stated, Marks plainly earned her two-point enhancement for abusing a position of public trust because it was her unique position in the campaign and expertise that engendered FEC and NRCC reliance on the campaign's official reports. *See* U.S.S.G. § 3B1.3. Although the PSR indicates that Campaigns Unlimited has ceased to operate, given Marks's prolific history as a campaign treasurer, the Court's sentence must account for the risk that Marks may again leverage her special skill, access, and experience in a corrupt fashion. *See* 18 U.S.C. § 3553(a)(2)(A) (promote respect for the law), (a)(2)(B) (deterrence), (a)(2)(C) (protection of public from future similar crimes).

The Court must also consider Marks's history and characteristics. *See id.* § 3553(a)(1). And the government acknowledges both that Marks has no criminal history and that she has experienced personal hardship in her family life. (*E.g.*, PSR ¶¶ 120-21). But those experiences must be weighed among the totality of circumstances, including and especially that Marks has, for most of her adult life, enjoyed a privileged status as a political operative and business owner. That she jeopardized everything by resorting to criminality at all—let alone in service of a disgraceful politician like Santos—is cause for extreme concern and cannot be easily explained away by reference to personal tragedy. To be sure, the PSR notes that, during her presentence interview, Marks "described a great childhood in which her basic needs were always met. She reported no abuse of any kind." (*Id.* ¶ 119). As this Court knows, that type of background is anomalous in the mine run of criminal defendants, who often themselves have experienced significant hardship. Indeed, it was exactly that type of anomaly the Court found to be an aggravating factor when sentencing Santos's fundraiser Sam Miele to a year and a day in prison. *See generally United States v. Miele*, No. 23-321 (JS). The defendant's anomalous behavior can, in part, be attributed to being manipulated by her coconspirator, Santos. But even that explanation has reasonable limits—to be sure, many of those affiliated with the same campaigns as Marks and Miele did not similarly follow Santos's criminal lead. ▇

5



B. <u>Financial Penalties</u>

Restitution is mandatory in this case (PSR ¶¶ 83, 150) and, as part of her guilty plea, Marks agreed to pay restitution in the full amount of each victim's losses as determined by the Court. As outlined in the PSR, Marks's restitution obligation, totaling $178,402.97, corresponds to the various funds the NRCC invested in Santos's candidacy as a proximate result of the instant fraudulent scheme. (*See id.* ¶¶ 25-26). A detailed breakdown of those funds is set forth in the enclosed order of restitution, the entry of which Marks does not contest.

IV. <u>Conclusion</u>

Based on the foregoing, the government respectfully submits that a within-Guidelines sentence of 18 months imprisonment plus approximately $178,000 in restitution would be reasonable and appropriate in this case.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:    /s/
Ryan C. Harris
Anthony Bagnuola
Laura A. Zuckerwise
Assistant U.S. Attorneys
(631) 715-7000

John P. Taddei
Senior Litigation Counsel

cc: Clerk of Court (JS) (via ECF and e-mail)
     Counsel of Record (via ECF and e-mail)
     U.S. Probation Officer Erica Vest (via e-mail)